UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN ARTHUR HERB,

                        Plaintiff,

              -vs-                                          14-CV-156-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (KENNETH R. HILLER, ESQ.) Amherst, New York, for Plaintiff.

                            WILLIAM J. HOCHUL, JR., United States Attorney (PETER WILLIAM JEWETT, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated December 15, 2014 (Item 14).

Plaintiff John Herb initiated this action on March 6, 2014 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 9, 12). For the following reasons, plaintiff's motion is

GRANTED, and the Commissioner's motion is DENIED.

## **BACKGROUND**

Plaintiff was born on September 18, 1978 (Tr. 138).[1]  He protectively filed an application for SSI benefits on December 20, 2010, alleging disability due to depression, anxiety, and personality disorder, with an onset date of August 6, 2002 (Tr. 138-142). The application was denied administratively on April 26, 2011 (Tr. 75-78).  Plaintiff then requested a hearing, which was held on September 5, 2012, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 27-73).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A vocational expert ("VE") also appeared and testified.

On October 15, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 14-22).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (depression, anxiety, personality disorder, and attention deficit hyperactivity disorder or ADHD) while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 16-18). The ALJ discussed the evidence in the record, including medical records, psychological assessments, reports from treating and consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff was capable of performing his past relevant work as a car washer, dishwasher, and photo

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action.

development machine operator (Tr. 18-22), and has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations (Tr. 18-21). Relying on the VE's testimony indicating that plaintiff was capable of performing his past relevant work as he actually performed it, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the application was filed (Tr. 22).

The ALJ's decision became the final decision of the Commissioner on January 15, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ erred in his consideration of the medical evidence; (2) the ALJ failed in his duty to develop the record; and (3) the ALJ erred in finding that plaintiff had past relevant work experience. *See* Items 9-1, 13. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 12-1.

## DISCUSSION

**I.    Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as

3

adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or

misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the

court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§ 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(a)(4)(ii); *see also* § 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment,

the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and

citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ Mazzarella determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since December 20, 2010, the application date (Tr. 16). At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 16-18).

At step four, the ALJ discussed the medical evidence of record, including plaintiff's history of depression and anxiety. He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent they are inconsistent with" the ALJ's RFC assessment (Tr. 19). As for the opinion evidence, the ALJ gave great weight to the opinions of consultative examiner Dr. Sandra Jensen, Ph.D. and evaluating psychologist T. Andrews (Tr. 20-21). Dr. Jensen found that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. Dr. Jensen found mild to moderate impairment in plaintiff's ability to make appropriate decisions, relate adequately with others, and deal appropriately with stress (Tr. 20). Dr. Andrews reviewed the medical records and found that while plaintiff has some limitations,

he is not as socially isolated as he alleged (Tr. 21).

Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: plaintiff can perform simple, repetitive, and routine tasks, with low contact with fellow workers and the general public in a low stress environment (Tr. 18). Relying on the VE's testimony, the ALJ found that plaintiff could perform his past relevant work as a car washer, dishwasher, and photo development machine operator (Tr. 22).

## IV.   Plaintiff's Motion

### A.  The Medical Opinion Evidence

Plaintiff argues that the ALJ erred in his consideration of the medical evidence. In this regard, the Social Security regulations provide that in determining eligibility for SSI benefits, the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c); *see also* 20 C.F.R. § 404.1527(c)). The ALJ "does not have to explicitly walk through these factors," so long as the court can conclude that the ALJ "applied the substance" of the listed factors and provided "good reasons" for the weight given to the medical source's opinion." *Hall v. Colvin*, 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran*, 362

F.3d at 32).

In formulating plaintiff's mental RFC, the ALJ largely relied on the opinion of Dr. Sandra Jensen, a consultative examiner, and found that it was supported by the objective medical record (Tr. 21). Dr. Jensen, whose opinion was afforded "great weight," examined plaintiff in March 2011 and found mild to moderate impairment in plaintiff's ability "to make appropriate decisions, relate adequately with others, and appropriately deal with stress" (Tr. 311). Dr. Jensen stated that plaintiff "needs a relatively high level of psychiatric intervention at this point and to be on medications that help him better" (Tr. 312). It is clear to the court that the ALJ relied on Dr. Jensen's opinion as substantial evidence in support of his RFC determination, which he was entitled to do. *See Finney ex rel. B.R. v. Colvin*, 2014 WL 3866452, at \*7 (W.D.N.Y. Aug. 6, 2014) (Report and Recommendation) ("A consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination.") (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995)).

The ALJ also afforded great weight to the opinions expressed in the Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") completed in April 2011 by the state agency consultative review physician, Dr. T. Andrews. Dr. Andrews reviewed plaintiff's medical records, including the report of Dr. Jensen, but did not examine the plaintiff (Tr. 18). In the MRFCA, Dr. Andrews found moderate limitations in plaintiff's ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual, to complete a normal work week, to maintain socially appropriate behavior and standards of neatness and cleanliness, to respond appropriately to changes in the work setting, and to set realistic goals or make

plans independently (Tr. 328-29). In the PRT, Dr. Andrews found moderate limitations in maintaining concentration, persistence, or pace, and mild limitation in activities of daily living and social functioning (Tr. 324).

Plaintiff argues that the ALJ failed to adequately explain the weight he afforded the psychological assessment completed by Gary DiNezza Ph.D. and Gwendoline Lander, M.A (Tr. 456-61). At the request of his treating providers, plaintiff underwent a psychological assessment on March 7 and 30, 2012. The examiners conducted a battery of tests and prepared a detailed report regarding plaintiff's functioning and limitations. The examiners found that the data supports a diagnosis of ADHD, "which may explain in part the patient's inability to maintain a job and likely affects daily functioning" (Tr. 460). They administered the Personality Assessment Inventory ("PAI") and found that plaintiff's score was "indicative of phobic behaviors that are likely to interfere significantly in his life." (Tr. 460). The scores also support the diagnosis of agoraphobia, which "leaves him incapacitated to maintain work or leave his home to socialize . . .." *Id.* Plaintiff's overall intellectual functioning was found to be within the average range, with a statistically significant strength in vocabulary and weakness in scanning and sequencing of simple visual information (Tr. 459). The examiners recommended that plaintiff continue psychiatric treatment, evaluation for medication to address ADHD and anxiety, and evaluation for possible vocational training "as a means to approach gainful employment." (Tr. 461).

The ALJ did not consider this report as a medical source opinion regarding plaintiff's specific limitations, ignored the medical opinions in the report regarding plaintiff's functional limitations, and failed to explain the weight, if any, it was afforded. For example, the ALJ seems to have ignored the examiners' opinion that plaintiff's phobic behaviors render him

unable to leave his home and maintain steady employment. The ALJ concluded that plaintiff simply lacked the motivation for employment, pointing to the examiners' suggestion that plaintiff be referred to vocational counseling as evidence that he is not disabled (Tr. 19-20). The examiners, Dr. DiNezza and Ms. Lander, were not treating providers but were consulting examiners who assessed plaintiff in an effort to "investigate the patient's diagnosis, . . . and how to best direct his treatment." (Tr. 456). While their "opinion" was not entitled to controlling weight, the report was comprehensive and relatively current and should have been assessed in conformance with the applicable regulations. Accordingly, remand is required to allow the ALJ to adequately explain the weight afforded the report of Dr. DiNezza and Ms. Lander, and to resolve the conflicts between the RFC determination and the medical statements of functional limitation in their report.

### B. Failure to Develop the Record

Plaintiff further argues that the ALJ failed to develop the administrative record and should have obtained a more detailed statement of plaintiff's limitations from a treating source. "'It is a well-settled rule in the Second Circuit that the Commissioner must affirmatively develop the administrative record due to the essentially non-adversarial nature of a benefits proceeding.'" *Felder v. Astrue*, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012) (quoting *Garcia v. Apfel*, 1999 WL 1059968, at *5 (S.D.N.Y. Nov. 19, 1999)); *see Rosa v. Callahan*, 168 F.3d at 79. However, the ALJ's duty to develop the record is not without limit. *See Guile v. Barnhart*, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). If all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary and the ALJ may make his

determination based upon that evidence. See 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d at 79 n. 5. Here, the record contains not only treatment notes from plaintiff's mental health care providers, but the report of the consultative examiner Dr. Jensen and the comprehensive report of Dr. DiNezza and Ms. Lander. Accordingly, the court finds that the medical evidence in the record presented to the ALJ was sufficient to provide a reasonable basis for the ALJ's determination of plaintiff's RFC. Plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to discharge his affirmative duty to further develop the record by obtaining a treating source statement containing a medical opinion as to the extent of plaintiff's functional limitations, although remand should include a proper consideration of the DiNezza/Lander report.

Additionally, plaintiff argues that the ALJ's RFC determination was not based on substantial evidence, as the opinions of Drs. Jensen and Andrews were too general and vague to translate into a specific RFC. While an expert opinion may describe a claimant's impairments in terms that are so vague as to render the opinion useless, see *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013), the use of vague phrases by a consultative examiner does not automatically render an opinion impermissibly vague. See *Rosenbauer v. Astrue*, 2014 WL 4187210, *16 (W.D.N.Y. Aug. 22, 2014) (collecting cases). In this case, Dr. Jensen provided an assessment after conducting a thorough examination of the plaintiff. She found plaintiff to be cooperative and his manner of relating adequate. His attention and concentration were intact and his intellectual functioning was average (Tr.

310-11). While Dr. Jensen found "psychiatric issues that do appear to interfere with his ability to function on a daily basis to some degree," she found that plaintiff was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks (Tr. 311). She found that plaintiff's ability to make appropriate decisions, relate adequately with others, and deal with stress would be mildly to moderately impaired. *Id.* Accordingly, Dr. Jensen's opinion that plaintiff would have some limitations was based upon medical examination, evaluation, and observation. Thus, the ALJ properly relied upon Dr. Jensen's opinion to support his RFC assessment that plaintiff can perform simple, repetitive, and routine tasks, with low contact with fellow workers and the general public in a low stress environment (Tr. 18). Additionally, the MRFCA of Dr. Andrews largely tracks the opinion of Dr. Jensen. Dr. Andrews found plaintiff not significantly limited in most aspects of his memory, concentration, social interaction, and adaptation, and found some areas of only moderate limitation (Tr. 328-29). Accordingly, plaintiff is not entitled to remand on the ground that the opinions of Drs. Jensen and Andrews were impermissibly vague.

### C. Plaintiff's Past Relevant Work

Finally, plaintiff argues that remand is necessary because the ALJ erred in his step-four finding that plaintiff could perform his past relevant work as a car washer, dish washer, and photo development machine operator. Plaintiff states that, while he held certain jobs, none of the jobs lasted long enough for his earnings to exceed the level determined by the Commissioner to constitute substantial gainful activity ("SGA"). Thus, he argues, he had no past relevant work.

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an

inability to ... perform [his] past relevant work." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). Under the regulations, past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). Substantial gainful activity is "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Work activity is "substantial" if it "involves doing significant physical or mental activities," and it is "gainful" if it is "the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* Work that is done on a part-time basis may be considered substantial. *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993).

In determining whether a claimant's past relevant work constitutes substantial gainful activity, "primary consideration" should be given to the earnings the claimant derived from the work activity. *See* 20 C.F.R. § 416.974(a)(1). The regulations provide earnings guidelines that "set a floor for earnings that presumptively constitute substantial gainful activity." *See Parker v. Astrue*, 2009 WL 3334341, *3 (N.D.N.Y. Oct. 14, 2009). "Although earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that any employee has not engaged in substantial gainful activity." *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993); *see Parker v. Astrue*, 2009 WL 3334341 at *3 ("the ALJ may consider a claimant's past work, even if the earnings from that work fall below the guidelines"); 20 C.F.R. §416.974(a)(1).

According to regulatory earnings guidelines, a rebuttable presumption arises that plaintiff engaged in substantial gainful activity if his average monthly income met or

exceeded $500 from January 1990 to July 1999, $700 from July 1999 to December 2000, and $780 in calendar year 2002.  See 20 C.F.R. § 416.974(b)(2) (i)-(ii); see also Social Security Administration Program Operations Manual System ("POMS") DI 10501.015, available at https:// secure.ssa.gov/poms.nsf/lnx/0410501015).

The record of plaintiff's work history is not entirely clear.  The record suggests that plaintiff worked as a dishwasher in 1994-95 and 1997, a car washer in 1997 and 1998, a camera store sales clerk/photo developer in 1999, and a photographer/sales clerk in 2002 (Tr. 143, 158). In his application for SSI, plaintiff represented that in 1997 to 2002, he worked approximately 32 to 40 hours per week at hourly rates ranging from $5.00 to $8.50 per hour (Tr. 143).  Plaintiff also testified that, since he filed his claim in December 2010, he has assisted his mother cleaning houses for two hours once or twice a week, for which he earns approximately $40 to $60 per week (Tr. 36-37).  In contrast to plaintiff's representations, his earnings records indicate that plaintiff earned just $235 in 1994, $250.15 in 1995, $1703.11 in 1997, $3257.66 in 1998, $662.69 in 1999, and $2938.64 in 2002 (Tr. 131, 136-37).  The earnings records only indicate the total earnings for the calendar year, not the number of weeks or months plaintiff worked at a specific job.  It is apparent, for instance, that had plaintiff worked from January to December 1997 as a dishwasher earning $5.50 per hour working 32 hours per week, as he represented (Tr. 143), he would have earned at least $7000 for the calendar year, when in fact he earned approximately $1700.  The court is left to assume that plaintiff worked far fewer hours per week than he reported in his application for benefits, or that his jobs did not last as long as he represented.  In any event, based on the earnings record, which is the only reliable statement of plaintiff's income for the relevant time period, it appears that the plaintiff's

average monthly income falls well below the regulatory threshold levels.

As stated above, however, the regulatory threshold levels are only guidelines, and work activity that falls short of the guidelines may still be considered past relevant work as long as it involved physical or mental activity and is the type of work typically conducted for pay. *Pickner,* 985 F.2d at 403. According to plaintiff's testimony, he worked as car washer for an auto dealer, a dishwasher at a restaurant, a photographer, and a sales clerk at a photography studio or photo store. The record supports the conclusion that each of these jobs required physical or mental activity and was of a kind typically performed for pay. However, the record does not support the ALJ's conclusions that plaintiff had "earnings consistent with substantial gainful activity" or that plaintiff held the jobs "for a sufficient length of time to learn the techniques, acquire the information, and develop the facility needed for average performance." (Tr. 22).

To reach a finding of not disabled at step four of the ALJ's sequential evaluation, the applicable "past relevant work" must be SGA. *See* 20 C.F.R. § 416.960(b)(1); *see, e.g., Eksund v. Astrue*, 343 F. App'x 228, 229 (9th Cir. 2009) ("Because past work must have been done at the substantial gainful activity level to be 'past relevant work' under the regulations, a finding that [claimant] was not disabled at step four was improper, and the analysis must proceed to step five."). Plaintiff's scant earnings during the relevant time period would suggest an inability to master the skills necessary for these jobs and to maintain employment. Accordingly, the court finds that the ALJ's determination that plaintiff could do his past relevant work is not based on substantial evidence and remand is required. The ALJ should properly determine whether plaintiff's past relevant work was substantial gainful activity and, if not, whether plaintiff could successfully transition to other

jobs in the national economy.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 9) is granted, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. Defendant's motion for judgment on the pleadings (Item 12) is denied. The Clerk of the Court is directed to close this case.

So ordered.

\_\_\_\_\_\s\ John T. Curtin\_\_\_\_\_
JOHN T. CURTIN
United States District Judge

Dated: May 6, 2015